**LEVENTHAL et al.**

v.

**JOHNSON.**

United States District Court
S. D. New York.

Feb. 5, 1954.

**324**

Benjamin Mahler, New York City, for plaintiffs.

J. Edward Lumbard, U. S. Atty., New York City, by Samuel R. Pierce, Jr., New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

In this suit for tax refund the Collector of Internal Revenue assessed an additional retailer's excise tax against the plaintiff for the period of December 1942 to March 1946 in the amount of $6,281.95.

The plaintiffs paid the tax plus interest thereon in the sum of $1,269.87 and they now bring the suit against the defendant to recover the amount paid plus interest.

The plaintiffs in this case are partners in the business known as J. Leventhal & Bro. and at various times during the period of December 1942 to March 1946 Mr. Alfonso Carvajal brought a number of people to the plaintiffs' place of business. Most of these people were South Americans visiting the United States. Certain fur coats and garments were ultimately sold and the question is whether these furs were sold to these customers by the plaintiffs, or whether the plaintiffs sold the furs at wholesale to Mr. Carvajal and he in turn as a retail dealer resold the furs to these customers.

The plaintiffs contend that they sold the furs at wholesale to Mr. Carvajal and that he in turn sold the furs as a retailer to these customers.

The Government, on the other hand, contends that Mr. Carvajal was not a retail dealer but was merely a broker who brought customers to the plaintiffs' place of business, and that the plaintiffs sold the garments to these customers directly.

The defendant contends that Mr. Carvajal got a commission of 10 per cent for acting as a broker in these cases, whereas the plaintiffs contend that this was not a commission at all but a trade discount for payments of the bills within the period of ten days.

There does not seem to be any dispute between the parties as to the meaning of Section 2401 of the Internal Revenue Code, 26 U.S.C.A. § 2401, which imposes a tax on the retail sale of certain articles of fur, so the decision here will turn on the question of whether the plaintiffs made such retail sales.

I am convinced here that the plaintiffs have well sustained their burden of establishing that the sales in question were made to Carvajal for resale by him and that they were not subject to the excise tax imposed by Section 2401.

It was Carvajal, not the ultimate purchaser of the furs, who placed the order and who paid the bill. It was Carvajal to whom credit was extended. It was Carvajal who had control over the ultimate price to be paid by the purchaser. In at least two instances it has been established that Leventhal did not know

who Mr. Carvajal's customer was, or if he knew, certainly had no direct dealing with him, but that the transactions were completely through Mr. Carvajal, who ordered the coats directly and who paid the bills.

It should be noted that Regulation 51, Section 320.4, makes clear that under Section 2401 even a consignee is considered the retail seller for excise tax purposes when the consignor has no control over the price or terms of sale to the ultimate consumer. This is noted in order to indicate that even in the event that it is determined that Carvajal was a consignee he would be considered a retail seller here for excise tax purposes.

It appears quite clearly that there had been a long and extended business relationship between the plaintiffs and Carvajal, which covered a period of some 25 years. I am ready to accept the explanation by the plaintiffs that this old and established relationship was the reason for not obtaining retailers' exemption certificates under Regulation 51, Section 320.23, at the time that the sales to Carvajal were made. Plaintiffs I believe explained that in their opinion there was no question that their transactions with Carvajal were wholesale transactions just as were some sales to various New York department stores for which plaintiffs similarly felt it unnecessary to obtain retailers' exemption certificates. However, as soon as the transactions with Carvajal were questioned the retailers' exemption certificates were obtained from Mr. Carvajal. And I cannot accept Mr. Carvajal's statement that he was not cognizant of what he was signing when he provided such certificates to plaintiffs. But I do believe he is telling the truth when he said he did not realize the effect of signing the retailers' exemption certificates, yet, nevertheless, I do believe that he realized that he was stating the truth when he asserted that he was indeed the retailer with respect to those transactions.

The 10 per cent discounts taken by Carvajal, as a result of prompt payment by him for the furs purchased, were entered in Exhibits A–1 to A–4 as a commission by the plaintiffs; yet it is quite clear to me from everything I have heard and seen here that it was undoubtedly a mistake of judgment on the part of the bookkeeper. All the other records indicate quite clearly that the transactions with Carvajal were treated as a wholesale sale to him of goods, and the records indicate that he took a discount of 10 per cent. In almost every case of those individuals listed on Exhibits A–1 to A–4, Leventhal directly billed the customer and then paid out a 10 per cent commission to those listed on Exhibits A–1 to A–4.

I am not prepared to say that this happened in every case, but as I recollect, it has not been refuted that it happened in almost every instance. At any rate, I am convinced that Leventhal had treated these transactions at all times as wholesale transactions, and Carvajal has testified that at no time was there any arrangement between them to enter into any sort of a deal or transaction to avoid the payment of these excise taxes.

I make the following specific findings of fact and conclusions of law:

1. An additional retailer's excise tax was assessed against the plaintiffs for the period December, 1942 to March 1946, in the amount of $6,281.95.

The plaintiffs paid the tax plus interest thereon in the sum of $1,269.87 to the defendant, Collector of Internal Revenue.

A claim for refund filed by the plaintiffs on July 15, 1948 was thereafter rejected.

On or about October 13, 1950, the plaintiffs brought this suit against the Collector of Internal Revenue for said sum of $6,281.95 tax and for said sum of $1,269.87 interest paid, plus interest on this amount.

2. The plaintiffs, Jack Leventhal and Harry Leventhal, are partners in the business of selling fur articles; their place of business is located at 130 West 30th Street, New York, New York, the plaintiffs doing business under the name

of J. Leventhal & Bro. and they were doing business under that name during the period December 1942 to March 1946.

3. During the period involved herein there was in force an Act of Congress imposing excise taxes on the sale of fur garments at retail. Up to the end of March 1944 such tax was at the rate of 10 per cent on the retail sales price and at the rate of 20 per cent of the retail price on and after April 1, 1944.

4. At all times prior and subsequent to the enactment of the excise tax law in question, plaintiffs were making sales of fur garments both at wholesale, that is, for resale; and at retail, that is, to the user or consumer, and the prices charged by the plaintiffs for garments sold at wholesale were lower than the prices charged for identical garments sold at retail.

During the period January 1, 1943 to March 31, 1946, the period covered by the examination, the plaintiffs reported and paid a total of $316,103.78 in taxes on account of their fur sales at retail made during that period.

5. Throughout the period involved herein, as well as prior and subsequent thereto, the plaintiffs used different and distinct invoices and records to handle and record sales at retail and sales at wholesale. Among the customers to whom plaintiffs were selling at wholesale was Alfonso Carvajal, who was engaged in the business of exporting and importing merchandise of all kinds, and who maintained an office at 66 Beaver Street, New York. Plaintiffs had been selling to Carvajal in the same manner for over 25 years.

6. Throughout this entire period, including the period involved in this litigation, Carvajal's account was carried in plaintiffs' wholesale customers ledger, and the invoices and bills used in connection with all sales to Carvajal were the wholesale forms of invoices. All fur garments purchased by Carvajal from plaintiffs were purchased for resale, his customers in the main being residents of South América, chiefly Columbia.

On occasion, Carvajal's customers would be taken to the place of business of plaintiffs and the customer would look over the stock and make a selection. Most of these customers did not speak English and then Mr. Carvajal acted as an interpreter. In any event, it was Carvajal to whom credit was extended and to whom the bills were made.

7. Carvajal paid all bills with his own checks and was ready to stand any loss in the event that his customer did not in turn pay him. All of Carvajal's customers ultimately paid him.

8. It was Carvajal's practice to charge his customer exactly what the plaintiffs charged Carvajal, accepting as his profit the 10 per cent discount allowed to Carvajal for the payment of his bills within ten days.

9. On at least two occasions Carvajal sent the plaintiffs orders which had in turn been sent to him from customers in South America.

10. On many occasions plaintiffs delivered all fur garments to Carvajal's office. On other occasions as an accommodation to Carvajal's customers, the garments would be delivered to a hotel suite or other place indicated by the customer who was in New York temporarily en route to South America.

11. The delivery tickets in the packages delivered to Carvajal bore Carvajal's name and address, and on occasion, were signed by or on behalf of Carvajal, indicating receipt of the garments.

In those instances where the garment was delivered directly to the customer, the delivery ticket would in addition to containing Carvajal's name and address also have noted thereon the customer's name, the hotel, and the room number.

12. Plaintiffs did not know the price charged to or being paid by the ultimate customer, nor the manner in which the price was paid.

13. At no time was any charge made to any of Carvajal's customers, nor was the name of any such customer entered on plaintiffs' books of account.

14. It was the practice in the fur industry to allow wholesale buyers a trade discount if the bill were paid promptly. Carvajal always paid his bills promptly and took advantage of this discount, and in all instances, except I believe one, took a 10 per cent discount, and in the particular exception there was a discount of 5 per cent taken.

15. The posting of the discount in the miscellaneous commissions account was an error and is contrary to all the records and documents establishing that the sale was of a wholesale character directly to Carvajal who was responsible for payment, and who was entitled to a 10 per cent discount upon prompt payment of the bill.

16. Carvajal was during the period involved herein registered with the City of New York as a retail dealer and had obtained from it license No. 301539.

17. Because of their long and extended business dealings with Carvajal, plaintiffs knew that he was buying these fur garments for resale.

18. Plaintiffs treated the sales to him in the same manner as they treated sales to other established wholesalers.

19. They did not when first making the sales after the enactment of the fur excise tax law obtain from him any federal retailer's exemption certificate.

20. After the examination by the Internal Revenue agent commenced, the plaintiff did obtain from Carvajal retail exemption certificates covering the period in question.

### Conclusions of Law

1. Plaintiffs at no time controlled the sale of the garments by Carvajal to his claimed customer, nor the price to be paid by the customer to whom Carvajal resold the garment, nor the terms on which the garment was to be sold.

2. Plaintiffs at no time charged, or had recourse to, the customers to whom Carvajal sold the garments. Plaintiffs looked only to Carvajal for the purchase price of the garments and received payment only from him.

3. The long series of dealings between the plaintiffs and Carvajal established that he was an independent buyer of garments from plaintiffs, buying at wholesale for the purpose of resale, title passing to him from plaintiffs, and the ultimate responsibility for payment was that of Carvajal.

4. Carvajal was not in the employ of the plaintiffs, and he received no compensation from them as an agent, broker or employee during the period in question. The discount taken by Carvajal at the time he paid the bill constituted a trade or cash discount deductible by a wholesale buyer from the purchase price.

Judgment accordingly awarded to the plaintiff.